UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAJMAH PAYTON, <br><br> Plaintiff, <br><br> v. <br><br> DELTA AIR LINES, INC., <br><br> Defendant. | No. 23 CV 5078 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tajmah Payton, an African American woman, worked as a ready reserve agent for defendant Delta Air Lines. While working at O'Hare International Airport, she alleges being subject to discrimination and harassment by her colleagues based on her race, color, and sex. Once she left O'Hare, she alleges that Delta retaliated against her for complaining about the discrimination when it denied her transfer to a position at a different airport and forced her to transfer back to her old position at O'Hare. She also alleges that Delta denied her transfer based on a record of disability. Left only with the option to return to O'Hare, Payton resigned. Payton now brings claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the Illinois Human Rights Act; discrimination under the Americans with Disabilities Act; and common law tort claims for intentional and negligent infliction of emotional distress in the alternative. Delta moves to dismiss the complaint. For the reasons discussed below, the motion to dismiss is denied in part and granted in part.

I.  **Legal Standards**

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, disregarding legal conclusions or "[t]hreadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

II. **Facts**

Tajmah Payton began working for Delta Air Lines in July 2019 as a ready reserve agent. [16] ¶ 9.[1] She worked loading and unloading baggage holds below the wings of planes at Delta's O'Hare International Airport location. *Id.* Payton, an African American woman, started experiencing problems with her colleagues right away. At a required training class for new employees, Payton decided not to pair up with a colleague, Richard Ungos, for a shift-swap program. *Id.* ¶¶ 14–15. Ungos became "very angry" and made statements with racial undertones. *Id.* ¶ 16. He also told other colleagues that Payton refused to swap with him and that she was "no good." *Id.* Robert Knoop, another colleague, heard Ungos's version of events and became "very angry" with Payton. *Id.* ¶ 17. During a tiedown procedure (when parked

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiff's amended complaint, [16].

planes are fixed in place at the gate), Payton had trouble inserting the pins to tie down the plane properly. *Id.* ¶ 18. Knoop yelled at Payton, "You've been here mother f***ing long enough to know how to do your mother f***ing job." *Id.* Payton alleges that Knoop never spoke to white female or male colleagues the same way, but he routinely spoke to African American colleagues in this manner. *Id.* ¶ 19. Payton reported this incident to Delta's Human Resources Division—she spoke with HR representatives and sent a letter describing the discrimination. *Id.* ¶ 21. After reporting the incident to HR, Payton was in the breakroom with Knoop and other male colleagues when Knoop directed the comment "snitches get stitches" toward Payton and mentioned the letter that Payton sent to HR. *Id.* ¶ 22. Payton perceived the statement as a threat related to the letter she submitted to HR. *Id.* ¶ 23. Payton reported Knoop's comment to HR, but HR only asked how she knew the threat was directed towards Payton. *Id.* ¶ 24. HR did not follow up with Payton about the complaint, but Payton learned that HR denied her discrimination complaint after following up with the office. *Id.*

After completing the required classroom training, Payton was assigned to work with a colleague, Primo, to push planes back from gates. [16] ¶ 26. The pushback procedure involved the ready reserve agent saluting the pilot to indicate that the plane could take off. *Id.* ¶ 27. Primo advised Payton that her signals were incorrect and that she would be fired if she did not give the pilot a thumbs up. *Id.* ¶ 28. Payton spoke to her supervisor who confirmed that a thumbs up was not a part of the pushback procedure. *Id.* ¶ 29. Her supervisor also acknowledged that Primo was

3

harassing Payton. *Id.* Delta's operating service manager spoke to Primo regarding the incident, but no action was taken. *Id.* Primo continued to give Payton "hateful and offensive looks," which he did not direct towards others. *Id.* ¶ 30.

On several occasions, Payton's colleague Kevin DeAlba did not show up to his assigned planes with Payton to load and unload baggage. [16] ¶ 32. As a result, Payton was responsible for loading and unloading baggage holds by herself. *Id.* Nick Sicovich (Payton's and DeAlba's lead) permitted DeAlba to "hide out" in the break room while Payton continued to work by herself. *Id.* ¶ 33. Payton reported this to O'Hare's station manager who told her that he would observe from above the wing to make sure this would not be an issue. *Id.* ¶ 34. Sicovich and DeAlba both denied leaving Payton to handle the baggage alone, and the station manager did not investigate the issue further. *Id.* ¶ 35–36. Other white female colleagues did not experience this issue—they were assigned to the same crew each day, work was distributed evenly among all crew members, and they were never left to unload a plane alone. *Id.* ¶ 39.

Payton continued to have issues with DeAlba. DeAlba texted Payton about her hours, and Payton asked him how he got her phone number. [16] ¶ 42. Later in the breakroom, Payton heard DeAlba recounting an exaggerated version of the story; the conversation was "full of racial microaggressions." *Id.* ¶ 43. Payton told DeAlba not to contact her via phone again. *Id.* ¶ 44. DeAlba reacted by punching his fist against the wall. *Id.* He also made excuses to avoid working with Payton and told other colleagues that he did not want to work with her. *Id.*

4

On several occasions, Payton was assigned to work in the baggage room, which was considered to be a punishment. [16] ¶ 45. Other white female colleagues were not assigned to the baggage room unless they asked for the assignment. *Id.* Payton worked in the baggage room with another African American female colleague. *Id.*

Payton reported these incidents to HR many times. [16] ¶ 47. She volunteered for time off during the COVID-19 pandemic and requested FMLA leave because of the anxiety from the harassment at work. *Id.* ¶¶ 48, 51.

On May 20, 2021, Payton was hired as a Delta customer service/ticket agent at Chicago Midway International Airport, which was a more prestigious role with opportunities for promotion. [16] ¶ 53. Two weeks after Midway hired her, Payton suffered a back injury while working as a baggage runner at O'Hare. *Id.* ¶¶ 41, 54. This injury was caused in part by the strain from handling baggage loads meant for two employees by herself. *Id.* ¶ 55. Her doctor recommended a 20-pound weightlifting restriction; her position as a ready reserve agent required her to lift between 50 to 70 pounds. *Id.* ¶ 56. While she was out on medical leave, Payton was transferred to Midway but not given an official start date. *Id.* ¶ 58. Her doctor cleared her to return to work on April 6, 2022, which she forwarded to Midway's station manager. *Id.* ¶ 59. Initially, Delta told Payton that the shift bids were closed, so Payton could not start at Midway. *Id.* ¶ 60. The week after, Payton was told that she could either work on charter planes or wait until September to return as an agent at Midway. *Id.* ¶ 61. Delta misrepresented to Payton that she would have to lift more weight than stated in the job description. *Id.* ¶ 62. A few days later, the Midway station manager spoke

to Payton about the ticket agent position and told her that she would need to wait until September to be properly trained for the role. *Id.* ¶ 64. The station manager guaranteed Payton still had the job but did not give her a start date. *Id.* ¶¶ 64, 67–68. She also told Payton, "We don't want any injuries here. We have never had injuries and we don't want any!" *Id.* ¶ 65.

On June 14, 2022, Delta transferred Payton back to the O'Hare location without her consent. [16] ¶ 69. She spoke to the O'Hare operations service manager and the regional manager about the issue. *Id.* ¶¶ 70–71. During a call with an HR representative present, Payton told the regional manager about the race and gender discrimination she experienced at O'Hare. *Id.* ¶ 71. The next day, the HR representative told Payton that she would be negatively affected if she did not return to work in her old position at O'Hare and that Delta could not hold a position for her. *Id.* ¶¶ 72–73. Faced with the prospect of returning to O'Hare and fearing for her physical safety, Payton resigned from Delta on September 11, 2022. *Id.* ¶ 73. Payton later learned that the ticket position at Midway was not available because it was given to somebody else. *Id.* ¶ 75. She continued to apply to open positions at Delta but was denied every job except a position in cargo where she was worried she would have to work with colleagues who harassed her at O'Hare. *Id.* ¶¶ 76–77.

Payton filed a charge for disability discrimination with the Equal Employment Opportunity Commission on August 3, 2022. [16] ¶ 78. The EEOC issued a Notice of Right to Sue on May 5, 2023. *Id.* ¶ 80. She filed a second charge with the EEOC for discrimination on the basis of race, color, and gender on June 21, 2023. *Id.* ¶ 81. The

6

EEOC issued a Notice of Right to Sue on July 3, 2023. *Id.* ¶ 83. The EEOC cross-filed both charges with the Illinois Department of Human Rights on July 20, 2023. *Id.* ¶¶ 79, 82.

### III. Analysis

Payton brings claims under federal and state law for discrimination based on race, color, and sex and for retaliation by Delta based on her complaints about the discrimination. [16] ¶¶ 84–95, 108–120. She alleges a hostile work environment while working at O'Hare, retaliation by Delta when it stalled her transfer to Midway and transferred her back to O'Hare, and constructive discharge. *Id.* Discrimination and retaliation claims are analyzed in the same manner under both Title VII of the Civil Rights Act and the Illinois Human Rights Act. *See Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022). Payton also brings claims for disability discrimination under the Americans with Disabilities Act and the IHRA. [16] ¶¶ 96–107. Disability discrimination claims are analyzed in the same manner under both the ADA and the IHRA. *See Teruggi v. CIT Grp./Cap. Fin., Inc.*, 709 F.3d 654, 659 (7th Cir. 2013). Payton pleads common law tort claims for intentional (or in the alternative) negligent infliction of emotional distress. *Id.* ¶¶ 121–134.

Delta contends that Payton does not sufficiently connect her discrimination claims to her protected characteristics: race, color, and sex. [20] at 10. At this stage, "a plaintiff need only allege enough facts to allow for a *plausible* inference that the adverse action suffered was connected to her protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (emphasis in original). Payton

has plausibly alleged that the discrimination she faced was because of her race. She mentions throughout her amended complaint how she was subject to harassment and poor treatment by co-workers and supervisors—treatment that her white colleagues were spared. *See, e.g.,* [16] ¶¶ 21, 39–40, 45. That is enough to infer that race was the reason for the differential treatment. But Payton's amended complaint does not allege facts about color discrimination. Race and color discrimination are overlapping but distinct concepts. *See Williams v. Wendler*, 530 F.3d 584, 587 (7th Cir. 2008). Payton says that "[d]arker skinned black employees were treated differently than those with white skin," [23] at 9, but the cited portion of her amended complaint only mentions race-based discrimination, [16] ¶ 40. While Payton sufficiently connects her race to the treatment she experienced, these incidents do not suggest color discrimination. Nor do the incidents mentioned elsewhere in her complaint plausibly connect her sex to discriminatory treatment. *See, e.g.*, [16] ¶ 19 (alleging that her colleague Knoop "routinely spoke to African American colleagues in this manner, regardless of their gender"), ¶ 45 (alleging that "similarly situated white female colleagues were never placed in the baggage room" as punishment). Payton mentions her identity as an African American woman and alleges that the "snitches get stitches" break room incident invoked the "angry Black woman" stereotype. *Id.* ¶ 22 n.7. But Payton must allege that her discrimination was "because of" her sex. *See Kaminski*, 23 F.4th at 777–78 (a plaintiff should explain "how she was aggrieved and what facts or circumstances lead her to believe her treatment was *because of* her membership in a protected class") (emphasis in original); *see also Barnes-Staples v. Carnahan*, 88 F.4th

8

712, 719 (7th Cir. 2023) (finding that a plaintiff must show that an adverse employment action was "at least in part on account of sex" without reaching the issue of whether an intersectional theory of discrimination can be the basis for a viable claim). She has not plausibly connected her color and sex to the alleged discrimination, so her Title VII and IHRA claims are limited to race-based discrimination.

> A.  **Hostile Work Environment**

Before a plaintiff may sue under Title VII, she must first file a charge with the EEOC. 42 U.S.C. § 2000-5(e)(1). In Illinois, this charge must be submitted within 300 days after the allegedly unlawful employment practice occurred. *See Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014). Discrete discriminatory acts like retaliation, termination, or denial of transfer constitute separate unlawful employment practices. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. Charges based on discrete acts are time-barred if not filed within the 300-day window even if they relate to acts alleged in timely filed charges. *Id.* Hostile work environment claims are distinct because "[t]heir very nature involves repeated conduct." *Id.* at 115. So long as any incident contributing to the hostile work environment occurred within the statutory time period, the claim is considered timely under the continuing violation doctrine. *Id.* at 118. A plaintiff's failure to exhaust administrative remedies is an affirmative defense that she need not anticipate or overcome in her complaint, but dismissal is appropriate when a plaintiff "pleads

herself out of court by alleging facts that are sufficient to establish the defense." *See Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006); *see also Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (dismissal is appropriate when "a complaint plainly reveals that an action is untimely under the governing statute of limitations").

Delta argues that Payton's race, color, sex discrimination, and hostile work environment claims are time-barred.[2] [20] at 4–6; [24] at 3–5. Payton's hostile work environment claim is based on her employment at O'Hare airport, where she was assigned as a ready reserve agent from September 2019 to August 2021. [16] ¶ 10. She alleges that the harassment she faced from her colleagues—comments with racial undertones, the "snitches get stitches" comment in the break room, incorrect directions during the tiedown procedure, and the wall-punching incident— contributed to a hostile work environment.[3] [23] at 10–11. Payton's EEOC charge for race, color, and sex discrimination was filed on June 21, 2023, more than two years after her last day at O'Hare. [16] ¶ 81. Payton argues that the clock began the day she was constructively discharged on September 11, 2022, which would make her claim timely because Delta "continued to contribute to the hostile work environment

---

[2] Delta does not argue that Payton's disability discrimination claim under the ADA is untimely.

[3] Payton's amended complaint also includes allegations of discrete acts like preferential treatment by supervisors to permit white colleagues to sit out of plane assignments or undesirable assignments to the baggage room. [16] ¶¶ 32–33, 45. These are separate from a hostile work environment claim, and they are also time-barred. *See Bass*, 746 F.3d at 840 (explaining that discrete acts like reassignment of duties are not considered as part of a continuing violation because "[n]othing about their duration or repetition changes their nature in such a way that a cumulative violation could arise").

[she] was trying to avoid when she attempted to transfer to Midway." [23] at 4–5. But Payton's constructive discharge is a discrete discriminatory act that cannot be used to "pull in" an otherwise time-barred act—the hostile work environment at O'Hare. *See Morgan*, 536 U.S. at 113. Once Payton left O'Hare, she was no longer subject to the harassment that she experienced from her colleagues, so she cannot allege that the hostile work environment continued because Delta "contributed" to it. *See Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011) (noting that an employer is liable for coworkers creating a hostile work environment if it was "negligent either in discovering or remedying the harassment").[4] Payton's hostile work environment claims under Title VII and the IHRA are dismissed as time-barred.

## B. Retaliation

To state a claim for retaliation, Payton must allege: "(1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the two." *Alley v. Penguin Random House*, 62 F.4th 358, 361 (7th Cir. 2023). Payton alleges two incidents of retaliation after she made complaints about discrimination: denial of transfer to Midway and involuntary transfer back to O'Hare.[5] [16] ¶¶ 91, 126. Delta argues that the retaliation claims are both time-barred and outside the scope of her EEOC charge. [20] at 12; [24] at 8.

---

[4] Past acts that fall outside of the actionable time period may be offered as "background evidence in support of a timely claim." *See Morgan*, 536 U.S. at 113. But the admissibility of supporting evidence is a different issue than the accrual of a claim.

[5] Payton's amended complaint alleges other instances of "retaliation" by Delta. *See* [16] ¶ 60 (retaliation when Patrice Austin notified her that all shift bids at Midway were closed, so Payton could not start her new position yet), ¶ 62 (retaliation when Austin misrepresented the job requirements for a ticket agent), ¶ 94 (retaliation when Delta "inform[ed] employees

11

A plaintiff may not raise claims of discrimination in a Title VII suit if those claims were not included in her EEOC charge. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). An EEOC charge encompasses claims made in a complaint if the claims are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc). The charge and complaint are reasonably related if they "at minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek,* 31 F.3d at 501 (emphasis in original). Generally, a retaliation charge is not considered reasonably related to a discrimination claim. *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 565 (7th Cir. 2019).

Payton did not check the box for retaliation in her second EEOC charge for race, color, and sex discrimination, *see* [16-1] at 24, but a checked box is not dispositive, *see Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 528 (7th Cir. 2003). Payton's EEOC charge describes the racial and gender discrimination she faced from her colleagues at O'Hare and how Delta failed to address it after her complaints. [16-1] at 24–27. When discussing the denial of transfer to Midway and transfer back to O'Hare, the charge makes no mention of any retaliation by Delta. *Id.* at 26. Her charge describes the transfer, "During my conversation about returning to work I told Fawad about the racial and gender discrimination I experienced at O'Hare. Fawad simply said that it would not continue if I returned to work." *Id.* at 26. At a high level

---

who harassed her because of her complaints"). But Payton does not allege that these acts rose the level of an adverse employment action.

12

of generality, the charge describes the transfer situation, but there is no mention of Delta's actions as being connected to Payton filing complaints of discrimination. Viewing the charge as a whole, it would not reasonably put the EEOC or Delta on notice to the possibility of a retaliation claim. *See Ajayi*, 336 F.3d at 528 (emphasizing the basic purpose of the charge to give the employer warning of the complained-of conduct). Payton did not exhaust administrative remedies for her retaliation claims based on the denial of transfer and forced transfer.

Payton's contention that "retaliation continued until [she] was constructively discharged on September 11, 2022" does not bring her claims within the time to file. [23] at 11. Retaliatory acts by an employer, including retaliatory denial of transfer or transfer, are discrete acts with their own limitations periods. *See Morgan*, 536 F.3d at 114. Payton says that Delta delayed her official start date sometime in April 2022, then transferred her back to O'Hare on June 14, 2022. [16] ¶¶ 68–69. Her EEOC charge was filed on June 21, 2023—more than a year past either incident. *Id.* ¶ 81. Her claims for retaliation are dismissed as time-barred.

## C. Constructive Discharge

Constructive discharge requires a plaintiff to show that "the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004). Constructive discharge is an adverse employment action that is viewed as equivalent to actual discharge. *Id.* at 141. There are two forms of constructive discharge, both requiring a plaintiff to show that the work environment had become intolerable.

13

*Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). The first involves an employee resigning due to discriminatory harassment, and a plaintiff must show "working conditions even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress thereby allowing an employer to address a situation before it causes the employee to quit." *Id.* (internal citations omitted). The second form involves an employer acting "in a manner so as to have communicated to a reasonable employee that she will be terminated." *Id.*; *see also Fischer v. Avanade, Inc.*, 519 F.3d 393, 409 (7th Cir. 2008) (constructive discharge occurs when the employer's actions show "the handwriting was on the wall and the axe was about to fall") (cleaned up).

Payton alleges that the workplace environment at O'Hare was so intolerable that when she was faced with the prospect of returning, she had no choice but to resign. [16] ¶ 73. While the standard for constructive discharge is more demanding than a hostile work environment claim, Payton plausibly alleges constructive discharge at this stage. She alleges numerous instances of harassment by her colleagues, including concerns for her physical safety, and alleges that resignation was the only real option. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014) (noting that plaintiff's complaint included specific examples of poor treatment, which "may not ultimately qualify as intolerable" but was sufficient at the pleading stage). This is sufficient to state a claim for constructive discharge.

### D. The Americans with Disabilities Act

The ADA prohibits disability discrimination by employers. 42 U.S.C. § 12112(a). To bring a claim for disparate treatment, an employee must allege that she was a qualified individual with a disability at the time of the employment decision. 42 U.S.C. § 12112(b). The ADA defines disability to include "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Payton alleges that she had a record of a physical impairment. [16] ¶¶ 101–03. An employee may establish "a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). This includes people "who have recovered from previously disabling conditions… but who may remain vulnerable to the fear and stereotypes of their employers." *See Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 509 (7th Cir. 1998). An impairment is a disability if it substantially limits a person's ability to "perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). The standard is "construed broadly in favor of expansive coverage." 42 U.S.C. § 12102(4)(A); 29 C.F.R. § 1630.2(j)(1)(i). While the standard is not a demanding one, "[n]ot every medical affliction amounts to, or gives rise to, a substantial limitation on a major life activity." *Cassimy v. Bd. of Educ. of Rockford Public Schs., Dist. No. 205*, 461 F.3d 932, 936 (7th Cir. 2006). The employee

15

must specifically connect how their alleged impairment substantially limits a major life activity. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015).

Payton alleges that she suffered a back injury at work. Her doctor recommended a 20-pound weightlifting restriction while she recovered. [16] ¶¶ 54–55. Payton took medical leave to heal from the injury. *Id.* ¶ 103. She was cleared to return to work by her doctor, but Midway's station manager knew about her record of impairment and refused to give her a start date because of it. *Id.* ¶ 104. The station manager commented, "We don't want any injuries here. We have never had injuries and we don't want any!" *Id.* ¶ 65. Delta contends that Payton fails to plausibly allege a record of disability because she does not connect her alleged impairment to a substantial limitation on a major life activity. [20] at 13. Lifting is recognized in the ADA's non-exhaustive list of major life activities. *See* 42 U.S.C. § 12102(2)(A); *Frazier-Hill v. Chicago Transit Auth.*, 75 F.4th 797, 803 (7th Cir. 2023). And a 20-pound weight restriction can be a substantial limitation on lifting. *See* 29 C.F.R. pt. 1630, app. 1630.2(j)(1)(viii) ("[S]omeone with an impairment resulting in a 20-pound lifting restriction that lasts or is expected to last for several months is substantially limited in the major life activity of lifting."). Payton plausibly alleges disability under the ADA, and Delta offers no other argument for dismissal of her ADA discrimination claim.

### E. State-Law Tort Claims

Payton pleads in the alternative that Delta intentionally inflicted emotional distress by participating in "racially discriminating against [her]" and for "retaliatory

16

conduct." [16] ¶¶ 121–27. She also pleads that Delta negligently inflicted emotional distress for the same reasons. *Id.* ¶¶ 128–34. Both claims are preempted by the Illinois Human Rights Act. The Illinois Human Rights Commission exercises exclusive jurisdiction over civil rights violations. 775 ILCS 5/8–111(D). A tort claim that "seeks redress for a civil rights violation as defined by the Act" for which there is no independent basis for the action is preempted. *See Maksimovic v. Tsogalis*, 177 Ill.2d 511, 516 (Ill. 1997) (internal quotation marks omitted). Not all tort claims are preempted. "The distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006). If the Act "did not furnish the legal duty that the defendant was alleged to have breached," the tort claim is not preempted. *Id.* Here, Payton's claims that Delta racially discriminated against her by failing to address her workplace complaints and retaliated against her by forcing her transfer back to O'Hare are allegations that Delta breached its duties as an employer under the IHRA. *See Smith v. Chicago Sch. Reform Bd. of Trustees*, 165 F.3d 1142, 1151 (7th Cir. 1999) (finding IIED claim was preempted because plaintiff's theory of the case was that she was a victim of racial harassment). Nothing in the complaint suggests an independent basis for a tort claim. The claims for intentional and negligent infliction of emotional distress are dismissed.

**IV. Conclusion**

Defendant's motion to dismiss, [18], is denied in part and granted in part. Plaintiff's claims for a hostile work environment and retaliation under Title VII

17

(Count I) and the Illinois Human Rights Act (Count III) are dismissed with prejudice.[6] Plaintiff's constructive-discharge claim as well as the disability discrimination claim under the Americans with Disabilities Act (Count II) and Illinois Human Rights Act survive. Plaintiff's common law tort claims for intentional and negligent infliction of emotional distress (Counts IV–V) are dismissed without prejudice.[7]

ENTER:

                                                Manish S. Shah
                                                United States District Judge

Date: June 27, 2024

---

[6] If a plaintiff fails to exhaust administrative remedies, the complaint is dismissed without prejudice. *See Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009). But because repleading would not cure untimeliness, untimely claims are dismissed with prejudice.

[7] Ordinarily, a plaintiff should be given at least one opportunity to amend a complaint. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015).